**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| | * |
| **CHARLES TYLER HAIRFIELD-ULSCH,** | |
| | * |
| **Plaintiff,** | |
| | * |
| **v.** | **Case No.: PWG-14-2418** |
| | * |
| **MONTGOMERY COUNTY,** | |
| **MARYLAND,** *et al.*, | * |
| | |
| **Defendant.** | * |
| | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff brings this case alleging common law and constitutional tort claims against several Montgomery County police officers.  According to Plaintiff, he was subjected to repeated Taser shocks and struck by the officers when a suspect in flight jumped into Plaintiff's car and tried to force him to drive away.  Defendants have moved to dismiss on the grounds that, *inter alia*, Plaintiff has not alleged specific actions by any individual officers.  Because I find that Plaintiff adequately has pleaded conduct sufficient to state his claims, I deny the motion.

I.       **BACKGROUND**

For the purposes of considering Defendant's motion, this Court accepts the facts that Plaintiff has alleged in his complaint as true.  *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).  On April 10, 2013, at approximately 10:00 p.m., Plaintiff Charles Tyler Hairfield-Ulsch was in the driver's seat of his car and had stopped at a red light on Parklawn Drive at its intersection with Randolph Road in Montgomery County.  2d Am. Compl. ¶ 3, ECF No. 17.

Suddenly, a man dove into Hairfield-Ulsch's car through his open driver's-side window and a struggle ensued. *Id.* ¶¶ 3–4. The man, later identified as Glenn V. Rhodes, tried to force Hairfield-Ulsch to drive his car forward in an apparent attempt to escape from Montgomery County Police Department ("MCPD") officers, who were chasing Rhodes. *Id.* ¶ 4.

A group of officers including Defendants Detective Patrick Skiba, Officer Robert Farmer, Officer Jeffrey M. Ward, Officer Christopher Steven Hackley, Sergeant Michael Pratt, Officer Matthew Runkles, Officer Josue D. Zalaya, Officer Aaron M. Bachofsky, Lieutenant James N. Brown, and Sergeant Mark Poole (collectively, the "Officers" or the "Officer Defendants")[1] quickly surrounded Hairfield-Ulsch's car. *Id.* ¶ 5. "Suddenly, and without any warning or notice or justification, the Defendant and an unknown number of the [Officer] Defendants, did intentionally and maliciously assault and batter the Plaintiff when they drew their Tasers and began firing electrical shocks into Plaintiff." *Id.* According to Hairfield-Ulsch, he was Taser-shocked at least four times by the Officers. *Id.* Hairfield-Ulsch alleges that the use of the Tasers was unnecessary and "violated the appropriate standards of care" and "constitute[d] a reckless disregard for the safety of the Plaintiff." *Id.* Hairfield-Ulsch also alleges that he repeatedly was struck on the head and body with hard, blunt instruments including the butt of a Taser or handgun. *Id.* ¶ 6. As a result, Hairfield-Ulsch "sustained property damage and severe and disabling personal injuries" and continues to experience pain, suffering, and emotional trauma as a result of the incident. *Id.* ¶ 10.

On April 2, 2014, Hairfield-Ulsch filed a complaint in the Circuit Court for Montgomery County against the MCPD. Compl., ECF No. 2. On April 23, 2014, the MCPD moved to

---

[1] Defendants' filings have identified the Officers with more specificity than Plaintiff provided in his complaint. *See* Defs.' Mot. to Dismiss, or in the Alternative, for Partial Summ. J., ECF No. 48. Because the specific names and titles of the Officers do not appear to be at issue, I will rely on Defendants' characterizations of their own identities.

dismiss on the ground that the MCPD is not an entity with the capacity to sue or be sued.  Def.'s Mot. to Dismiss and Mem. of Points and Authorities in Supp. of Dismissal, ECF No. 8.  The Circuit Court for Montgomery County denied the motion and granted Hairfield-Ulsch leave to amend his complaint to substitute Montgomery County, Maryland (the "County") as the defendant.  Order, ECF No. 13.  The County then moved to dismiss on the ground that it is not subject to suit under state tort law and cannot be held vicariously liable for the conduct of its employees under 42 U.S.C. § 1983.  Def.'s Mot. to Dismiss Am. Compl. and Mem. of Points and Authorities in Support of Dismissal, ECF No. 15.

On June 14, 2014, Hairfield-Ulsch filed his Second Amended Complaint naming the County and the Officer Defendants and setting forth claims for (I) "Assault and Battery"; (II) gross negligence; and (III) violations of 42 U.S.C. § 1983.  2d Am. Compl.  Defendants removed to this Court on August 6, 2014 under this Court's federal question jurisdiction, 28 U.S.C. § 1331.  *See* Notice of Removal, ECF No. 1.  On August 13, 2014, Defendants filed their Motion to Dismiss, or in the Alternative, for Summary Judgment ("Defs.' Mot."), ECF No. 48, and supporting Memorandum ("Defs.' Mem."), ECF No. 48-1.  Hairfield-Ulsch has opposed the motion, Pl.'s Opp'n to Defs.' Mot. to Dismiss, or in the Alternative, for Partial Summ. J. ("Pl.'s Opp'n"), ECF No. 49, and Defendants' have replied, Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss or, in the Alternative, for Partial Summ. J. ("Defs.' Reply"), ECF No. 53.  In support of their motion for summary judgment, Defendants have attached affidavits from Defendants Bachofsky, Brown, Farmer, Hackley, and Zelaya, each of whom claims that they did not have any physical contact with Hairfield-Ulsch, "did not strike Plaintiff about his head or his body," "did not strike Plaintiff with a Taser," and "did not strike Plaintiff with any blunt instruments," Bachofsky Aff. ¶¶ 6–9, Defs.' Mem. Ex. 1, ECF No. 48-2; Brown Aff. ¶¶ 5–8, Defs.' Mem. Ex.

2, ECF No. 48-3; Farmer Aff. ¶¶ 4–7, Defs.' Mem. Ex. 3, ECF No. 48-4; Hackley Aff. ¶¶ 4–7,

Defs.' Mem. Ex. 4, ECF No. 48-5; Zelaya Aff. ¶¶ 5–7, Defs.' Mem. Ex. 6, ECF No. 48-7, and an

affidavit from Defendant Pratt that does not deny physical contact with Hairfield-Ulsch but

otherwise denies striking or shocking him, Pratt Aff. ¶¶ 4–6, Defs.' Mem. Ex. 5, ECF No. 48-6.

Hairfield-Ulsch argues that summary judgment is inappropriate before "the parties have

been given a fair opportunity to conduct discovery," Pl.'s Mem. 7, but he also attaches as an

exhibit an affidavit describing his experiences on April 10, 2013, Hairfield-Ulsch Aff., Pl.'s

Mem. Ex. 2, ECF No. 49-2, and a police report that describes the chase from which Rhodes fled

into Hairfield-Ulsch's car and which acknowledges that "Tasers were deployed" and the officers

used "quick striking techniques and pressure points to remove [Hairfield-Ulsch] from the

driver's seat." Police Report, Pl.'s Mem. Ex. 1, ECF No. 49-1.

The motion now is ripe and is before me. Having reviewed the filings, I find a hearing is

not required. Loc. R. 105.6.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it

fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237,

2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency

of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th

Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009),

when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief,"

4

Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

Where a defendant files a motion styled as one to dismiss or, in the alternative, for summary judgment, it "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *See Sager v. Hous. Comm'n*, 855 F. Supp. 2d 524, 542 (D. Md. 2012). Pursuant to Rule 12(d), where "matters outside the pleadings are presented to and not excluded by the court," a motion to dismiss must be treated as one for summary judgment and all parties must be given an opportunity to present evidence on their behalf. Fed. R. Civ. P. 12(d). Styling a motion as one to dismiss or, in the alternative, for summary judgment is sufficient to provide notice to all parties that the motion may be converted to one for summary judgment. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

However, "a district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Sager*, 855 F. Supp. 2d at 542 (quoting 5C Charles Alan Wright et al., *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2011 Supp.)). "This discretion 'should be exercised with great caution and attention to the parties' procedural rights.' In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition

of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary." *Id.*

## III.   DISCUSSION

### A.  Defendants' Motion to Dismiss

Defendants' primary argument for dismissal of all three counts is that Hairfield-Ulsch has not identified the officers who struck or shocked him with sufficient specificity.  *See* Defs.' Mem. 5 ("These general, conclusory allegations do not establish a claim against any specific Defendant Officer, as there are no allegations that any specific Officer came into contact with Plaintiff."), 7 ("Plaintiff has not identified any act taken by any specific Defendant Officer . . . ."), 8 ("Plaintiff's Second Amended Complaint contains no allegations that any of the individual officers were personally involved in any of the general actions alleged.").  According to Defendants, this is a failure to "allege that any of the Defendant Officers ever touched or came into contact with" Hairfield-Ulsch.  *Id.* at 5.

However, this characterization of the complaint simply fails to square with its allegations, according to which Hairfield-Ulsch claims that at least some of the Officer Defendants "drew their Tasers and began firing electrical shocks into Plaintiff" and "struck the Plaintiff about his head and body with blunt instruments."  2d Am. Compl. ¶ 5–6.  It is hard to imagine a clearer allegation that defendants "touched or came into contact" with a plaintiff.  Rather, Defendants seem to be aggrieved by the fact that Hairfield-Ulsch, who, under the facts considered most favorably to him, was being beaten and shocked repeatedly, somehow was unable to identify or recall the specific officer responsible for each blow (as if—under these alleged facts—he should have been able to read their name plates or badge numbers).  Though the failure to present more precise proof at trial after full discovery may be an obstacle to Hairfield-Ulsch's ultimate

recovery, it is singularly disingenuous at this stage—before any discovery has taken place—to seek to dismiss a case on such rigidly formalistic grounds.[2]

Further, it is well-established that a plaintiff who otherwise can state a valid claim may be forgiven a lack of precision in naming defendants before discovery has given him the information needed to target the appropriate party or parties. "[C]ourts have rejected the dismissal of suits against unnamed defendants described by roles, defendants identified only as 'John Doe's,' or an institutional defendant, until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials." *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) (internal citations omitted); *cf. Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971); *Bohanan v. Doe*, 527 F. App'x 283, 291 (5th Cir. 2013) ("While certainly not ideal, IFP plaintiffs are permitted to plead claims against unnamed defendants."). This is not a case where a plaintiff has "fail[ed] to specify any culpable action taken by any single defendant," *see Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009), or sued high-level officials who are not alleged to have been involved in the actual tortious acts alleged, *cf. Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (dismissing claims where "[t]he unnamed 'John Poe' defendants are also high-level officials"). *But see Davis*, 160 F.3d at 921 (approving of declining to dismiss lawsuits against supervisors where it appears that plaintiff requires discovery to determine the subordinate officials against whom he can state a valid claim).

---

[2] Defendants' insistence that the complaint be dismissed because it has not alleged individual actions by each of the ten Officer Defendants in striking or shocking Plaintiff particularly is notable in light of the affidavits provided by Defendants in support of summary judgment. By providing affidavits from only six officers denying that they struck or shocked Hairfield-Ulsch, Defendants' denials of liability tacitly admit that the remaining Officer Defendants each personally may have struck or shocked him. Accordingly, even were I to dismiss Hairfield-Ulsch's complaint, it would be without prejudice to amending the complaint to replead an identical claim against Defendants Skiba, Ward, Runkles, and Poole and, were he to find that they acted jointly with the remaining Officer Defendants, seeking to join them at that time. Such formalism is antithetical to the dictates of Fed. R. Civ. P. 1 and 8(e).

Hairfield-Ulsch has proceeded against ten officers who actually were present and whom he alleges actually participated in the events alleged in the complaint. *See* 2d Am. Compl. ¶ 5. This stands apart from a case like *Roberts v. Prince George's County, Maryland*, in which a plaintiff, after discovery, could not identify any individual officers who even were present when his rights were violated. 157 F. Supp. 2d 607, 609 (D. Md. 2001). Though discovery may demonstrate that some of these Officers were not involved, Hairfield-Ulsch has pleaded "factual content that allows the court to draw the reasonable inference that the [defendants are] liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 578 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)), even if he admits to some uncertainty as to precisely which defendants, if any, are likely to bear ultimate liability. The mere inability to allege the specific conduct engaged in by each Officer at the outset of a case simply is not the same as a failure to allege any conduct by any Officer and does not constitute a valid basis for dismissal.

This also is the only basis given for seeking to dismiss Count III, which alleges violations of 42 U.S.C. § 1983. Defs.' Mem. 7–8. Though the failure to allege personal involvement by a defendant is fatal to a § 1983 claim, *see, e.g.*, *Iqbal*, 556 U.S. 662, the inability to pick out a defendant by name at the commencement of a case is not, *see, e.g.*, *Bivens*, 403 U.S. 388. Nor, in light of the fact that all ten Officer Defendants appeared to be acting in concert, can I discount the possibility that they were joint actors who would be jointly and severally liable for any constitutional torts that they are found to have committed. *Cf. Roberts*, 157 F. Supp. 2d at 609 (allowing for possibility that officers could be liable for standing idly by while other officers committed constitutional tort). Accordingly, there is no basis to dismiss Count III of the complaint.

Defendants also seek to dismiss Counts I and II on more specific grounds for failure to state a claim for which relief can be granted.

Count I of the Second Amended Complaint is titled "Assault and Battery," but appears to set forth a claim for common law battery, which occurs "when one intends a harmful or offensive contact with another without that person's consent." *Nelson v. Carroll*, 735 A.2d 1096, 1099 (Md. 1999). Defendants first argue that the Officer Defendants' actions "were not unlawful with the intent to harm and they certainly were not malicious, but rather, were an attempt to stop a fleeing suspect and Plaintiff, who appeared to be aiding in that flight." Defs.' Mem. 6. Second, Defendants argue that they "had legal authority and justification for any contact." *Id.* Neither argument merits dismissal.

Defendants fundamentally misconstrue the nature of the intent required for a battery: it simply does not matter whether Hairfield-Ulsch adequately has pleaded "malicious intent" because this is not required to make out a battery claim. *See* Defs.' Mem. 5.[3] "The intent element of battery requires not a specific desire to bring about a certain result, but rather a general intent to unlawfully invade another's physical well-being through a harmful or offensive contact . . . ." *Nelson*, 735 A.2d at 1101. "On the other hand, a purely accidental touching, or one caused by mere inadvertence, is not enough to establish the intent requirement for battery." *Id.* (citing *Steinman v. Laundry Co.*, 71 A. 517, 518 (Md. 1908)). It could not be disputed that Hairfield-Ulsch had a legally protected interest in not being struck with a Taser or a blunt instrument. Nor do the allegations in the complaint allow for the inference that the Officer

---

[3] Although a finding of "actual malice" may have ramifications under Maryland's Local Government Tort Claims Act, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-302(b)(2), those ramifications are not at issue here.

Defendants shocked and struck Hairfield-Ulsch inadvertently.[4]   *See* 2d Am. Compl. ¶¶ 5–6 (alleging Hairfield-Ulsch was shocked at least four times and struck repeatedly).  Defendants' argument that mere recklessness or wantonness cannot satisfy the intent element of battery simply is inapposite; the complaint alleges that the officers purposely fired their Tasers, not that the Tasers inadvertently went off while innocently being held by officers.  *Cf. Hendrix v. Burns*, 43 A.3d 415, 428 (Md. Ct. Spec. App. 2012) (no battery where driver of automobile ran red light at high rate of speed but without intending to hit another's automobile).  Accordingly, Hairfield-Ulsch adequately has pleaded sufficient intent to state a claim for battery.

Nor is it clear from the allegations of the complaint that the Officer Defendants "had legal authority and justification for any contact."  *See* Defs.' Mem. 6.  Although Maryland courts have dismissed common law tort claims against police officers acting upon probable cause, *see, e.g.*, *Hines v. French*, 852 A.2d 1047, 1057 (Md. Ct. Spec. App. 2004) (dismissing battery claim where it was undisputed that officer had received 911 dispatch indicating that plaintiff's car had been involved in hit-and-run accident), it is undisputed here that Hairfield-Ulsch was guilty of nothing but being in the wrong place at the wrong time.  Although it is possible that a jury ultimately would find that the Officer Defendants, faced with a dangerous situation and reacting in the moment, acted reasonably, the reasonableness of their actions by no means can be established from the face of the complaint.  *Cf. Okwa v. Harper*, 757 A.2d 118, 181–82 (Md. 2000) (regarding determination of justification and reasonableness of arrest as the province of the fact-finder).  Defendants may advance justification as an affirmative defense as this case

---

[4]  Although Defendants' Memorandum argues that the officers had the mistaken belief that Hairfield-Ulsch was aiding Rhodes's flight, this is not the same as arguing that they did not intend to shock or strike him.

moves forward, but that does not provide a basis on which to dismiss Hairfield-Ulsch's claim for battery on the complaint alone.

Defendants also seek to dismiss Hairfield-Ulsch's claim for gross negligence on the grounds that "his vague, general allegations lack the requisite specificity to state a claim of gross negligence," and that "the actions of the Defendant Officers in attempting to stop a fleeing suspect and someone who appeared to be helping him escape do not rise to the level of wilful or wanton misconduct."  Defs.' Mem. 7.  To state a claim for gross negligence, a complaint must allege

> "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.  Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist."

*Babre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (quoting *Linscombe v. Potomac Edison Co.*, 495 A.2d 846 (Md. 1985)).  "Gross negligence must be plead[ed] with specificity."  *Khawaja v. Mayor and City Council of Rockville*, 598 A.2d 489, 491 (Md. Ct. Spec. App. 1991) (citing *Smith v. Gray Concrete Pipe Co.*, 297 A.2d 721 (Md. 1972)).

Maryland courts have been loath to find gross negligence on anything less than the most egregious police conduct.  *See, e.g.*, *Babre*, 935 A.2d at 718–19 (finding sufficient facts to support finding of gross negligence where, in light most favorable to nonmovant, officer shot an unarmed suspect who had his hands up).  And, in fact, the Maryland courts of appeal expressly have found that engaging in a car chase "at high speeds on a road congested with traffic" does not, of itself, constitute gross negligence.  *Boyer v. State*, 594 A.2d 121, 132 (Md. 1991); *see also Khawaja v. Mayor and City Council of Rockville*, 598 A.2d 489, 492 (Md. Ct. Spec. App. 1991) (finding no gross negligence in police car chase).  But Hairfield-Ulsch's injuries did not

result from the police chase alone; he alleges that, after Rhodes dove through the window of his car (presumably in view of the officers who were chasing him), officers swarmed the car and repeatedly shocked and struck Hairfield-Ulsch without regard for whether he was the suspect they were chasing—or his victim.  Compl. ¶¶ 7–8.  As alleged by Hairfield-Ulsch, the officers' conduct did not evidence a mere failure to take adequate precautions but rather a "thoughtless disregard" as to whether Hairfield-Ulsch was a suspect or an innocent party, and the allegation that Hairfield-Ulsch was shocked not once, but four times—after which he repeatedly was struck with a hard, blunt object—is sufficient to show, at the very least, that the officers were "so utterly indifferent to the rights of [innocent bystanders] that [they] act[ed] as if such rights did not exist." *Babre*, 935 A.2d at 717.  Accordingly, Hairfield-Ulsch has stated a claim for gross negligence.

### B.  Defendants' Motion for Summary Judgment

Defendants also ask me to grant summary judgment with respect to Defendants Bachofsky, Brown, Farmer, Hackley, Pratt, and Zelaya.  Defs.' Mem. 8–9.  This is a matter within my discretion under Fed. R. Civ. P. 12(d), and I decline to grant summary judgment at this time.  First, the possibility that officers who did not, themselves, strike or shock Hairfield-Ulsch nevertheless may have acted jointly with those who did counsels against granting judgment to any individual defendant at this time.   But even more importantly, it is not appropriate to grant summary judgment on any of Hairfield-Ulsch's claims before any discovery has taken place based on little more than a series of nearly identical, self-serving affidavits denying liability.  If it should become apparent during discovery that any or all of the Officer Defendants did not participate in the acts that form the basis of Hairfield-Ulsch's complaint, his counsel will be obligated by Fed. R. Civ. P. 11 to dismiss those individuals from this case and, in

any event, those Officers will have the opportunity at the close of discovery to seek summary judgment in their favor.  But at this stage, having succeeded in stating a valid claim, Hairfield-Ulsch is entitled to explore the contours of that claim in discovery before being forced to respond to a summary judgment motion.

## IV.     CONCLUSION

Accordingly, Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment will be DENIED.

Pursuant to Fed. R. Civ. P. 12(a)(4)(A), Defendant SHALL HAVE fourteen (14) days to answer the Second Amended Complaint.

A separate order shall issue.

Dated: <u>March 25, 2015</u>                                   _____/S/_____
                                                              Paul W. Grimm
                                                              United States District Judge
dsy